UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
LANDEL ELLIS                                                           15-cv-2228

                            Plaintiff,                          **COMPLAINT**

    -against-                                                              **JURY DEMAND**

CITY OF NEW YORK, P.O. DEREK HARRIS
and POLICE OFFICERS "JOHN DOES #1-5"
(the names John Does being fictitious as
their true names are presently unknown),

                            Defendants.
----------------------------------------------------x

      Plaintiff, by his attorney, Law Office of Philip Akakwam, P.C., complaining of the defendants, City of New York, P.O. Derek Harris and Police Officers "John Does #1-5" (collectively "defendants"), upon information and belief alleges as follows:

## INTRODUCTION

      1. This is an action at law to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to plaintiff by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983 [and § 1985], and arising under the laws and statutes of the City and State of New York.

      2. Plaintiff seeks monetary damages for: the false arrest, false imprisonment and violation of his federally guaranteed constitutional and civil rights. Plaintiff seeks whatever other relief is appropriate and necessary in order to serve the interest of justice and assure that his remedy is full and complete.

## JURISDICTION

3. The jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343[3] and [4] in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and under the Fourth and Fourteenth Amendments to the United States Constitution.

4. Jurisdiction is also invoked pursuant to 28 U.S.C. Section 1367, entitled Supplemental Pendent Party Jurisdiction. Plaintiff requests that the Court invoke pendent jurisdiction over any and all claims arising under the laws and Constitution of the State of New York.

5. Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

6. Plaintiff, a black male, is a resident of the City of New York, County of Queens and State of New York.

7. Defendant, City of New York (City) is a municipal entity existing under the laws and Constitution of the State of New York and was the public employer of the defendant police officers through its Police Department - New York City Police Department- and the actions of the police officers complained of herein were done as part of the custom, practice, usage, regulation and/or direction of the City of New York.

8. Upon information and belief, defendants P.O. Derek Harris and Police Officers John Does #1-5 were police officers employed by defendant City of New York.

9. Plaintiff is suing the defendant officers in their individual and official capacities.

## FACTS COMMON TO ALL CAUSES OF ACTION

10. On or about July 8, 2014, at approximately 12:30 p.m., plaintiff was arrested near the intersection of 146 drive and 177 Street, in Queens New York while plaintiff was sitting on

the sidewalk near a fence with her two infant kids. Plaintiff was arrested by defendant officers without probable cause and without justification or reasonable suspicion.

11. On the date and time aforesaid, plaintiff was sitting by the side of a fence which was providing a shade from the sun. Plaintiff had his 3 year old son and nine month old daughter in their child seats by plaintiff's side. Then defendant police officers approached plaintiff as he was watching over his kids.

12. The officers asked plaintiff why were the kids in their child seats outside; plaintiff replied them that it was too hot inside his truck and that he wanted to have some air outside under the shade provided by the fence.

13. The officers asked plaintiff whether he was trying to play smart with them. They told him that if he plays smart with them they were going to have his kids taken away. Then they ordered plaintiff to get behind his truck.

14. Plaintiff was searched on the street but nothing illegal was found on him. The defendant officers proceeded to search plaintiff's truck and nothing illegal was found.

15. Plaintiff explained to the officers that he was just relaxing with the kids near the fence which was away from the direction of the sun while he waited to pick up their mother after she gets off from work. Plaintiff told them where the kids mother worked and what time she was going to get off from work. The officers were not interested in any of these information.

16. The officers proceeded to call an ambulance and had the kids transported to Long Island Jewish Hospital.

17. And the officers called the office of Administration for Children's Services and misrepresented to them that plaintiff was endangering his kids.

3

18. Plaintiff was transported to the 105 police precinct where he was detained for more than 12 hours before being taken to Central Booking.

19. While at the precinct, the defendant officers verbally harassed plaintiff by calling plaintiff a sex offender and a pedophile.

20. Plaintiff told the officers that he was going to file a complaint against them for harassment. He asked the officers for a form to file a complaint.

21. Because plaintiff had requested information to file a complaint against the officers, the officers claimed that plaintiff needed psychiatric examination and they transported plaintiff to Queens hospital for evaluation.

22. Plaintiff underwent psychiatric evaluation at the hospital where the doctors determined that there was nothing wrong with plaintiff.

23. In the meantime, while plaintiff was in detention, the defendant officers, in collaboration with ACS released plaintiff's kids to strangers without any proper investigation into their status. Defendants failed to contact the mother of the kids who continued to think that her kids were with plaintiff, their father.

24. After plaintiff was discharged from the hospital, he was taken back to Central Booking where he was detained until the following day when he was brought before a judge.

25. Based on false information provided by defendant officers, plaintiff was charged with endangering the welfare of her kids and for unlawful possession of marihuana.

26. Plaintiff was granted bail but was unable to post bail. He was taken to Rikers Island where he was detained for about 10 days before the bail was vacated.

27. Plaintiff was released after bail was vacated. Thereafter, plaintiff had to appear in

court more than five different times before all the charges against him were dismissed.

28. And plaintiff suffered and continues to suffer emotional distress, fear, humiliation, embarrassment, shock, loss of liberty, loss of income, psychological trauma, pain, and damage to reputation as a consequence of the defendants' unlawful conduct alleged herein.

29. Plaintiff suffered violations of his federally guaranteed constitutional and civil rights including rights guaranteed to him under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

30. Defendant Officers acted together and in concert sanctioning and ratifying and otherwise condoning the wrongful actions being taken by each of the defendant Officers in a collective manner and fashion.

31. Plaintiff has no other adequate remedy at law but for this action.

## AND AS FOR A FIRST CAUSE OF ACTION:
## 42 U.S.C. § 1983 - FALSE ARREST AND IMPRISONMENT

32. Plaintiff reiterates paragraphs 1 through 31 and incorporates such by reference herein.

33. By their conduct and under color of law, defendant officers deprived plaintiff of his constitutional right to be free from false arrest and false imprisonment.

34. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## AND AS FOR A SECOND CAUSE OF ACTION

**(Monell/42 U.S.C. Section 1983: Claim Against Defendant City of New York)**

35. Plaintiff reiterates paragraphs 1 through 34 and incorporates such by reference herein.

36. The foregoing violations of plaintiff's federal constitutional rights and resultant injuries were directly and proximately caused by conduct, chargeable to defendant City, amounting to deliberate indifference to the constitutional rights of persons, including plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities.

37. The defendant City, through its police department, the NYPD, has developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of plaintiff's rights.

38. It was the policy and/or custom of the City to undertake inadequate and improper investigations of civilian complaints of police misconduct and to punish inadequately officers involved in complaints which were substantiated.

39. Both Internal Affairs Bureau (IAB) and the Civilian Complaints Review Board (CCRB) have substantially failed in their responsibilities to investigate misconduct and to discipline transgressors. The IAB investigations of brutality rarely lead to any administrative trials and, in the rare instances that charges are sustained administratively, the punishment is minimal, lacking any deterrent effect.

40. Defendant City, acting through the NYPD, had actual and/or de facto policies, practices, customs and/or usages of wrongfully profiling, arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiff, who is black, on the pretext that they were involved in some illicit activities.

41. The aforesaid deliberate or *de facto* policies, procedures, regulations, practices and/or customs were implemented or tolerated by policymaking officials for defendant City including

6

but not limited to, the New York City Police Commissioner, who knew or should have known that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases.

42. Defendant City failed to provide proper training and/or failed to insure that the training provided was adequately understood in regard to the following tasks which police officers commonly perform:

(a) The determination of probable cause to make an arrest;

(b) The duty to take into account the totality of the circumstances in determining the existence of probable cause to make an arrest;

(c) The circumstances under which investigative detentions may lawfully occur and the manner in which they may lawfully be executed;

(d) The very limited circumstances under which a warrantless search may be carried out.

43. Defendant City, acting through the NYPD, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when there is probable cause for such arrest.

44. The policymaking officials at NYPD know or ought to have known that such issues that regularly arise in the investigation and prosecution of criminal cases either present police

employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations and making the wrong choice.

45. The aforementioned policymaking officials knew that the wrong choice by police officers concerning determination of probable cause will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

46. Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct. For example, in *Floyd v. City of New York*, 813 F. Supp. 2d 417, 422 (S.D.N.Y. 2011), the Southern District of New York observed that the City of New York had been accused of racial profiling on multiple occasions and that it had settled at least one of the lawsuits brought against it concerning racial profiling. And in *Ligon v. City of New York*, 12 Civ. 2274, 2013 U.S. Dist. LEXIS 22383, at *9-*10 (S.D.N.Y. Feb. 14, 2013), the Court determined that the City of New York, acting through the NYPD, engages in illegal and unreasonable stop, frisk, search and seizure. *See also Davis v. City of New York*, 10 Civ. 0699, 2013 U.S. Dist. LEXIS 45601 (S.D.N.Y. March 28, 2013) (same).

47. Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

48. As a result of inadequate training of police officers on the practical meaning of probable cause for arrest, officers frequently detain and/or arrest citizens based on their hunches,

inklings, or mere suspicion and without reasonable or probable cause.

49. As part of its policies, customs and practices, Defendant City has failed to take proper corrective and punitive actions against overreaching police officers thus creating the impression that crime reduction is paramount and triumphs over constitutional rights in all circumstances.

50. Prior to and at the time of the incident alleged herein, the defendant City was aware of the need for more or different training, rules, regulations, investigation and discipline relating to police officers engaged in racial profiling, and was deliberately indifferent to that need.

51. As a direct and proximate result of the City's policies and deliberate indifference, defendants violated plaintiff's constitutional rights causing plaintiff to suffer substantial damages.

## AND AS FOR A THIRD CAUSE OF ACTION
**(Negligent Hiring, Training and Supervision Under State Law; Defendant City)**

52. Plaintiff reiterates paragraphs 1 through 51 and incorporates such by reference herein.

53. By virtue of the foregoing, defendant City of New York is liable to plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants and/or employees employed by the NYPD with regard to their aforementioned duties.

54. As a direct and proximate result of the acts and omissions of the defendants described in this Complaint, plaintiff suffered a significant loss of his liberty and violation of his federal constitutional rights, was prevented from attending to his necessary affairs and suffered and continues to suffer significant emotional pain, distress, humiliation and embarrassment.

### AND AS FOR A FOURTH CAUSE OF ACTION
### (Malicious prosecution - Against All Defendants)

55. Plaintiff reiterates paragraphs 1 through 54 and incorporates such by reference herein.

56. Plaintiff was subjected to malicious prosecution and malicious abuse of the criminal process in violation of his right under the Fifth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

57. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damage herein before stated.

### AS AND FOR A FIFTH CAUSE OF ACTION

58. Plaintiff reiterates paragraphs 1 through 57 and incorporates such by reference herein.

59. The conduct of defendants in taking plaintiff's children away from him and entrusting them with strangers deprived plaintiff of the affection and services of his children.

60. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damage herein before stated.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

i. For compensatory damages in an amount to be determined at trial - against all defendants, jointly and severally;

ii. For punitive damages against the individual defendants in an amount to be determined at trial;

iii. For reasonable attorneys' fees, together with costs and disbursements of this action, pursuant to 42 U.S.C. § 1988 and to the inherent powers of this Court;

iv. For pre-judgment interest as allowed by law; and

    v.      For such other and further relief as the court deems just and proper.

Dated: Brooklyn, New York
       April 20, 2015

                                LAW OFFICE OF PHILIP AKAKWAM, P.C.

                      By:       /s/
                                Philip Akakwam, Esq.
                                Attorneys for the Plaintiff
                                303 Livingston Street, 2nd Floor
                                Brooklyn, N.Y. 11217
                                (718) 858-2488

15-cv-2228

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

LANDEL ELLIS

                      Plaintiff,

    -against-

CITY OF NEW YORK, P.O. DEREK HARRIS
and POLICE OFFICERS "JOHN DOES #1-5"
(the names John Does being fictitious as
their true names are presently unknown),

                      Defendants.

---

## COMPLAINT

---

LAW OFFICES OF PHILIP AKAKWAM, P.C.
Attorneys for Plaintiff
Office and Post Office Address
303 Livingston Street, 2nd Floor
Brooklyn, N.Y. 11217
(718) 858-2488

---

TO:

---

Service of a copy of the within is hereby admitted.

Dated:

_____